Filed 10/20/25  P. v. Wansor CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RONALD STUART WANSOR,<br><br>    Defendant and Appellant. | D085993<br><br><br>(Super. Ct. No. BAF1900410) |

APPEAL from a judgment of the Superior Court of Riverside County, Samuel Diaz, Jr., Judge.  Affirmed.

Jill M. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Eric Tran, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found Ronald Stuart Wansor guilty of one count of sexual penetration by force, fear, duress, or menace of Jane Doe, a minor under 14

years old and at least seven years younger than him (Pen. Code,[1] §§ 269, subd. (a)(5), 289, subd. (a) (count 1)) and one count of committing a lewd and lascivious act on Jane Doe, a child under 14 years of age (§ 288, subd. (a) (count 2)). Wansor was sentenced to an indeterminate prison term of 15 years to life and a consecutive determinate term of eight years.

Wansor contends that the trial court improperly allowed the admission of certain items of evidence, namely, (1) Jane Doe's videotaped forensic interview; (2) evidence that Jane Doe observed Wansor slap the face of Jane Doe's grandmother; and (3) Jane Doe's testimony that Wansor committed the uncharged offense of furnishing marijuana to her (Health & Saf. Code, § 11361, subd. (b)). With respect to Jane Doe's testimony that Wansor furnished marijuana to her, Wansor presents the alternative argument that the prosecutor engaged in misconduct by eliciting that evidence. Finally, Wansor contends that insufficient evidence supports a finding that the sexual penetration in count 1 was accomplished by force, violence, duress, menace, or fear of immediate and unlawful bodily injury.

We conclude that Wansor's arguments either lack merit or are forfeited because he did not raise them in the trial court. Accordingly, we affirm the judgment.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2015, Jane Doe was 12 years old. Wansor is Jane Doe's father. Jane Doe lived primarily with her mother, but she sometimes stayed with Wansor in the house where Wansor lived with Jane Doe's grandmother. On those

---

[1] Unless otherwise indicated all further statutory references are to the Penal Code.

occasions, Jane Doe and Wansor shared a bedroom and often slept in the same bed.

In August 2015, Jane Doe disclosed to her mother that Wansor had recently committed a sexual assault against her while she was staying with him. Jane Doe's mother immediately reported the incident to the police, and Jane Doe participated in a forensic interview on August 27, 2015.

During the 2015 forensic interview, and later during her 2023 trial testimony, Jane Doe stated that Wansor had pressured her to start smoking marijuana with him approximately a month before the sexual assault. During her forensic interview, Jane Doe explained that she initially refused Wansor's requests that she smoke marijuana, but he continued to insist and then became angry, so she acquiesced. As Jane Doe stated, "[H]e . . . started getting mad and when he gets mad he has like anger issues and he punches things and I was scared he was gonna hurt me so I just did it." According to Jane Doe, "I kept telling him no but he got mad and I was scared" because Wansor "started raising his voice" and had "this look" like "he was gonna to hit me or . . . hurt me," and "I just got scared so I didn't want to be hit." Jane Doe subsequently smoked marijuana with Wansor every time she stayed with him over the next month. Jane Doe's trial testimony regarding her use of marijuana with Wansor was consistent with her statements during the forensic interview.

As Jane Doe explained in her forensic interview, a few weeks after she started using marijuana with Wansor, she woke up to find Wansor masturbating to pornography on the television.[2] Later that day, after

_____

[2] During her 2023 trial testimony, Jane Doe recalled that the incident when Wansor displayed pornography on the television preceded the incident when Wansor masturbated in front of her, whereas during her 2015 forensic

confirming that Jane Doe had seen him masturbating, Wansor asked Jane Doe, "Can I do it to you?" Jane Doe initially refused, but Wansor returned to the subject the next evening while Jane Doe was high from the marijuana that Wansor told her to smoke.

Jane Doe told the forensic interviewer, "[T]he next day he started getting mad so he was like, 'Take off your pants.' And, you know, I was scared, I didn't wanna be hit so I did and he was like, 'Take off your underwear.' So I did." According to Jane Doe, Wansor "seemed more violent, he was like raising his voice" and had "more of the mean look on his face." Wansor "looked like he was gonna hit me so I got really scared and I said, 'No,' about once or twice," but "finally I did it because he started raising his voice and stuff even more." Jane Doe stated that Wansor "looked mad or something like as if he and . . . my grandma just got in a fight," and she explained that she had previously witnessed Wansor slapping her grandmother on the face. Jane Doe told the forensic interviewer that Wansor had never hit her in the past, "[b]ut there's always that thought in the back of your mind because he has punched through the door," "he has punched through the wall," "and there's a big hole in his wall right now" "from his punch." Similarly, during her trial testimony Jane Doe explained that she complied with Wansor's demand to undress because she was scared Wansor might hit her. Explaining her fear, Jane Doe testified, "I had seen just different fights in the house, and I had personally never been hit, but I know he had hit his mom before. And so I was worried about that." Also, she remembered that Wansor "would get upset and . . . punch walls or doors," creating holes.

---

interview, Jane Doe described those two incidents as occurring simultaneously.

During her forensic interview and her trial testimony, Jane Doe explained that after she undressed, Wansor licked his pinky finger and inserted it into Jane Doe's vagina, moving his finger in and out a few times for approximately 30 seconds to a minute. Wansor stopped and left the room when Jane Doe pushed him away. Later, Wansor came back into the room and told Jane Doe, 'You can't tell anyone about this.'" Wansor did not say why Jane Doe could not make a disclosure, but Jane Doe explained to the forensic interviewer that she understood Wansor would go to jail if anyone found out.

According to Jane Doe's trial testimony, a second lewd act occurred the day after the digital penetration. Specifically, Wansor grabbed Jane Doe's foot and rubbed it on his penis, through his clothing, for approximately 15 minutes while they were in bed watching pornography together. Wansor's penis became erect during the rubbing. The incident ended when Jane Doe pulled her foot away.

The police did not immediately bring criminal charges against Wansor after Jane Doe's 2015 forensic interview. However, in 2019 Jane Doe's mother became aware of videos that Wansor had recently posted on Instagram, in which he described and boasted about sexual acts with Jane Doe and appeared to masturbate while saying Jane Doe's name. Jane Doe's mother reported the videos to law enforcement, and the police interviewed Wansor about them. During the interview, although Wansor denied ever touching Jane Doe in a sexual manner, he did admit to smoking marijuana with her, to masturbating with her in the room, and to being sexually aroused by fantasizing about her. Wansor stated he "came super close" to touching Jane Doe in a sexual manner, "but it didn't happen."

5

An amended information charged Wansor with one count of sexual penetration by force, fear, duress, or menace of a minor under 14 years old and at least seven years younger than him (§§ 269, subd. (a)(5), 289, subd. (a) (count 1)) and one count of committing a lewd and lascivious act on a child under 14 years of age (§ 288, subd. (a) (count 2)).

Wansor was granted leave to represent himself during trial. The jury convicted Wansor on both counts, as charged, and then made true findings on certain aggravating factors. The trial court sentenced Wansor to an indeterminate prison term of 15 years to life and a consecutive determinate term of eight years.

## II.

## DISCUSSION

A. *Wansor's Challenges to the Trial Court's Evidentiary Rulings*

Wansor contends that the trial court erred in admitting certain items of evidence, namely (1) Jane Doe's videotaped forensic interview; (2) evidence that Wansor slapped Jane Doe's grandmother; and (3) evidence that Wansor furnished marijuana to Jane Doe. We consider each item in turn, and in so doing, we explain that Wansor has forfeited each of his appellate challenges.[3]

1. *Jane Doe's Forensic Interview*

We first address Wansor's argument that the trial court improperly allowed the People to play the video of Jane Doe's forensic interview during trial.

---

[3] We are mindful of the fact that Wansor chose to represent himself in the trial court. However, "[s]elf-represented defendants are 'held to the same standard of knowledge of law and procedure as is an attorney.'" (*People v. Frederickson* (2020) 8 Cal.5th 963, 1000.) Thus, a defendant who represents himself is subject to the forfeiture doctrine, including as to the admissibility of evidence. (*People v. Clark* (1990) 50 Cal.3d 583, 618, 625.)

The admission of the video was first raised in the People's motion in limine, in which they requested that the video of the forensic interview be admitted as a prior consistent statement. (Evid. Code, §§ 791, 1236.) At an initial in limine hearing, the trial court noted that the People had filed a motion seeking a ruling on the admissibility of the video, but it deferred ruling stating, "We don't have to take care of that now. Because we don't know if there's any consistent or inconsistent statements."

During a later in limine hearing, the trial court stated, "For the record, the Court has received premarked 1 through 11A. Any objections on the record?" The video of the forensic interview was marked as exhibit 11, and the transcript of that video was marked as exhibit 11A. Wansor replied, "No, sir" as to the entire range of the exhibits. The trial court then stated, "They'll be admitted subject to foundation." Immediately thereafter, referring specifically to the video of the forensic interview and the People's asserted ground for seeking its admission, the trial court explained, "As to the [forensic] interview, if the victim testifies in this trial, the [forensic] video will then be played, either during the time the victim is on the witness stand or after. It's up to the People. But it is coming in as a consistent statement. But obviously you have -- the victim should be here present. Court cannot play Exhibit No. 11 or 11-A if the victim does not come here and testify because it's hearsay, unless there's an exception."

During trial, after Jane Doe had already testified, the trial court inquired whether the People would play the video of the forensic interview during the next day's testimony. After the People confirmed their intention to do so, the following discussion took place between Wansor and the trial court:

7

"THE COURT:    All right.  And your -- is there an objection for the [forensic] interview to be played tomorrow?  Did you want the [forensic] interview?

"THE DEFENDANT:    Is that the interview with --

"THE COURT:    When she was 12 years old.

"THE DEFENDANT:    Yes, I am.

"THE COURT:    Do you have any objection?  And if you do, you need to state it.

"THE DEFENDANT:    I do have an objection.  But I do not want -- I do not know what it would be based upon.

"THE COURT:    Just tell me in -- why you want to object to it.

"THE DEFENDANT:    Prejudice.  Again --

"THE COURT:    Since you watched the interview, is there anything in there that you're saying it's objectionable?

"THE DEFENDANT:    It's been a while before [*sic*] I've seen it.

"THE COURT:    Would you like to see it again before we leave?

"THE DEFENDANT:    No, it's fine.  I'll withdraw my objection.

"THE COURT:    All right."

The People presented the video to the jury the next day during the testimony of the police detective who observed the interview as it occurred.

Wansor argues on appeal that the trial court improperly admitted the video because it "amounted to impermissible hearsay to which no exception applied."  (Capitalization omitted.)  The People counter that, because Wansor did not object to the admission of the video, Wansor has forfeited his ability to argue that the trial court improperly admitted it.

"Reviewing courts will generally not consider a challenge to the admissibility of evidence unless there was a ' " 'specific and timely objection in the trial court on the same grounds sought to be urged on appeal.' " ' " (*People v. Gomez* (2018) 6 Cal.5th 243, 286 (*Gomez*); see also Evid. Code, § 353, subd. (a) [error in admitting evidence may not be the basis for the

8

reversal of a judgment unless "an objection to or a motion to exclude or to strike the evidence . . . was timely made and so stated as to make clear the specific ground of the objection or motion"].)  However, forfeiture may be excused when the record establishes that " 'an objection would have been futile.' "  (*Gomez,* at p. 287 [an evidentiary objection on a different or more specific ground would have been futile when "the record suggest[ed] that the trial court would have rejected *any* objection to the testimony" about the defendant's failure to leave his jail cell to come to court on one morning of trial, based on its statements that " 'I don't plan to let it go,' " that even if it could not " 'find a case exactly in point,' it was 'going to be a pioneer,' " that it was " 'not going to let the defendants control the court,' " and that it had " 'no doubt but what it shows a consciousness of guilt,' " italics added].)

Wansor acknowledges that he did not object to the admission of the forensic interview.  However, he contends that his forfeiture should be excused because "any specific objection to the [forensic] interview, either in limine or during trial, would have been futile" because "any objection would have been overruled."  He concludes that the trial court would have overruled the objection because "the trial court preemptively addressed the notion the interview was hearsay" and "inasmuch as the trial court erroneously believed the [forensic] interview was admissible as a prior consistent statement."

The record does not support Wansor's contention that it would have been futile for him to object to the admission of the video of Jane Doe's forensic interview.  As we have explained, at two distinct points in the proceedings, the trial court gave Wansor an opportunity to raise an objection, with no indication that it had already decided how it would rule on such an objection.  First, during in limine motions, without commenting on what its ruling would be, the trial court inquired whether Wansor had any objection to

9

the admission of the video and its transcript. Wansor said, "No sir." The trial court followed up with a comment explaining the legal framework governing the admissibility of the video, including that the video would ultimately not be admitted unless Jane Doe testified and an exception to the hearsay rule applied. Second, during trial, the trial court specifically inquired whether Wansor had an objection to the People's request to play the video for the jury. Far from discouraging Wansor from asserting an objection or indicating that it would rule against Wansor if he did so, the trial court offered to give Wansor an opportunity to view the video so that he could evaluate whether he wanted to raise an objection. Wansor expressly stated that he did not have an objection.

Moreover, Wansor's appellate argument regarding the admissibility of the video serves to underscore that his futility argument is without merit. Evidence Code section 791 provides: "Evidence of a statement previously made by a witness that is consistent with his testimony at the hearing is inadmissible to support his credibility unless it is offered after: [¶] . . . [¶] (b) An express or implied charge has been made that his testimony at the hearing is recently fabricated or is influenced by bias or other improper motive, and the statement was made *before* the bias, motive for fabrication, or other improper motive is alleged to have arisen." (Evid. Code, § 791, italics added.) Wansor argues that Jane Doe's statements during the forensic interview did not meet this requirement because she did not make the statements *before* her motive to lie arose. Specifically, Wansor argues that Jane Doe lied because of custody proceedings between him and Jane Doe's mother that were *already* underway during Jane Doe's forensic interview. Wansor's argument is intensely factual and depends on circumstances and evidence that Wansor failed to identify for the trial court in the context of

10

whether the forensic video was admissible. Because the record contains no indication that the trial court was aware that the timing of the custody proceedings had any relevance to the admissibility of the forensic video, we perceive no ground to conclude that it would have been futile for Wansor to raise that factual issue in the trial court when objecting to the video's admissibility.

In sum, based on the foregoing, we conclude that Wansor has forfeited his appellate contention that the trial court erred in admitting the video of Jane Doe's forensic interview.

2. *Evidence That Wansor Slapped the Face of Jane Doe's Grandmother*

Next, we consider Wansor's contention that the trial court erred in admitting evidence that Jane Doe witnessed Wansor slap her grandmother's face on an occasion prior to the crimes at issue in this case.

The People filed a motion in limine seeking a ruling permitting the admission of evidence that Jane Doe witnessed Wansor slap her 71-year-old grandmother in the face in June 2015, causing bruising. As the People explained, Jane Doe mentioned the incident during her forensic interview when explaining why she was afraid that Wansor would hit her if she refused to submit to his demands. The People argued that the slapping incident was admissible because it was relevant to whether Wansor committed sexual penetration by using force, fear or duress.

At the in limine hearing, the prosecutor explained his basis for seeking to admit evidence that Jane Doe witnessed the slapping incident: "One of the elements I have to prove for Count 1 is that the act was committed by force, violence, duress, menace, or fear. Just to show that the victim was in reasonable fear of the defendant when the sexual act occurred. Because she claims she was afraid of her father because she saw him being violent in the

11

past." Wansor replied to this argument by stating, "Which she will not testify to because she's never feared me at all. She's had no reason to." The trial court characterized Wansor's objection by saying, "You just disagreed with the facts -- with the offer of proof; is that correct?" Wansor replied, "Correct." The trial court stated, "Your offer of proof objection is noted. But the [prosecutor] is an officer of the court and he must do so in good faith, and the Court finds, at this time, he's acting in good faith." The trial court ruled that it would admit evidence that Jane Doe witnessed Wansor slap her grandmother's face.[4]

Subsequently, Jane Doe's forensic interview was played for the jury at trial, including her statements about Wansor slapping her grandmother. Further, during Jane Doe's testimony, she stated that she was scared of Wansor because she had seen him slap her grandmother, which was why she complied with Wansor's demand that she take off her pants and underwear. During trial, Wansor made no objection to the introduction of that evidence.

The doctrine of forfeiture applies to Wansor's appellate argument regarding the slapping incident. As we have explained, Wansor's only objection in the trial court to the evidence that he slapped Jane Doe's grandmother was that he did not think that Jane Doe would state she was scared of him on that basis, which the trial court characterized as an objection to the prosecutor's offer of proof. On appeal, Wansor raises completely different arguments concerning the admissibility of the evidence. Principally, Wansor argues that the slapping incident was only minimally

---

4      In making its ruling, the trial court cited Evidence Code section 1101, subdivision (b) and Evidence Code section 1103. The parties agree that the trial court mistakenly cited Evidence Code section 1103, as that provision deals with evidence of the *victim's* character for violence, which is not at issue here.

probative on the issue of whether he committed sexual penetration by fear or duress and that evidence of the slapping incident was unduly prejudicial within the meaning of Evidence Code section 352.  An appellate argument that evidence was improperly admitted is forfeited unless the appellant made a " ' " 'specific and timely objection in the trial court on the *same grounds* sought to be urged on appeal.' " ' "  (*Gomez, supra*, 6 Cal.5th at p. 286, italics added.)  Because Wansor did not assert any objection in the trial court on the grounds that he now raises on appeal, we conclude that he has forfeited his appellate arguments.

3.     *Evidence That Wansor Furnished Marijuana to Jane Doe*

Wansor's final challenge to the court's admission of evidence concerns Jane Doe's statements that he furnished marijuana to her when she was 12 years old, which is a crime.  (Health & Saf. Code, § 11361, subd. (a) [furnishing cannabis to a minor under 14 years of age].)

As we have noted, Jane Doe explained during her forensic interview that Wansor pressured her to smoke marijuana and that she was high on marijuana when Wansor sexually penetrated her.  Wansor also admitted during his police interview that, in 2015, he smoked marijuana with Jane Doe.  The complaint originally filed against Wansor charged him with the crime of furnishing marijuana to a minor, but that charge was not included in the information.

The People did not file a specific motion in limine to alert the court that they intended to present the jury with evidence that Wansor furnished marijuana to Jane Doe.  However, the trial court first learned of the issue while ruling on the People's motion in limine to admit into evidence the video recording of Wansor's police interview.  Wansor asserted an objection to the entirety of the video, and the trial court inferred that the objection was based

13

on undue prejudice pursuant to Evidence Code section 352.  The trial court then went through the video to decide which parts should be excluded pursuant to Wansor's objection.  With respect to Wansor's admission that he smoked marijuana with Jane Doe, the trial court asked the prosecutor about the relevance of that admission.  The prosecutor explained that it "corroborates that the victim claimed force and fear.  The defendant made her at 12 years old smoke marijuana."  After confirming that Jane Doe would testify to that fact, the trial court ruled, "That is relevant, it's probative, not highly prejudicial."  The trial court indicated that the People's motion to admit statements in the video about "smoking weed" was granted, "over the defendant['s] objection."  While the court was delivering its ruling, Wansor stated, "Is that actually relevant?"  The trial court replied, "Yes.  [The] Court already -- you made the objection, [the] Court noted your objection," which was "overruled."

During Jane Doe's testimony, the prosecutor began to question Jane Doe at length about Wansor providing her with marijuana.  Wansor did not raise any objection.  However, in the middle of the prosecutor's questioning on the subject, the trial court, on its own initiative, excused the jury and called for a conference with Wansor and the prosecutor.  Noting that a conviction would "be looked at closely by [the] court of appeals" because Wansor was representing himself, the trial court explained that due to the length of the questioning on the subject "[i]t's starting to get too prejudicial, that's why the Court intervened."  The trial court explained that it wanted to formulate a limiting instruction to present to the jury.  It therefore asked the prosecutor to review CALCRIM 375 and identify the purpose for presenting the marijuana evidence to the jury.  The prosecutor stated that the evidence was being offered to prove Wansor's motive and opportunity to commit sexual

14

assault. The trial court concluded that it would "give, over the defendant's objection, CALCRIM 375" to instruct the jury on the limited use it could make of the evidence that Wansor had committed the uncharged offense of furnishing marijuana to Jane Doe.[5]

After resuming proceedings in the presence of the jury, the trial court immediately instructed the jury with CALCRIM No. 375. It then allowed the prosecutor to continue questioning Jane Doe about smoking marijuana with Wansor. Prior to the jury's deliberations, the trial court again instructed with CALCRIM No. 375, specifying that the instruction was directed to "evidence that the defendant committed the offense of furnishing cannabis or giving cannabis to a minor under 14 years of age in violation of California Health and Safety Code section 11361(a) that w[as] not charged in this case."[6]

On appeal Wansor challenges the admission of Jane Doe's trial testimony that he furnished her with marijuana.[7] He argues that the

_____

[5] Although the trial court stated it was giving CALCRIM No. 375 "over the defendant's objection," that statement is puzzling because the reporter's transcript does not reflect any objection or other statement by Wansor with respect to either that instruction or Jane Doe's testimony on the subject of marijuana.

[6] When instructing the jury with CALCRIM No. 375 during trial, the trial court stated that the jury could consider the evidence only for the limited purpose of deciding whether Wansor had a *motive or plan* to commit the offenses alleged in this case. When instructing with CALCRIM No. 375 prior to the jury's deliberations, the trial court stated that the jury could consider the evidence only for the purpose of deciding whether Wansor had an *opportunity* to commit the offenses alleged in this case.

[7] In his opening appellate brief, when challenging the admission of evidence that he furnished marijuana to Jane Doe, Wansor targets only the statements made during Jane Doe's trial testimony. He does not argue that

15

evidence was not relevant to prove his motive, opportunity or plan as the trial court instructed the jury. According to Wansor, Jane Doe's testimony on that subject therefore constituted inadmissible character evidence. (See Evid. Code § 1101, subd. (a), (b).)[8] Wansor also argues that the evidence should have been excluded pursuant to Evidence Code section 352 because it was unduly prejudicial.

Wansor has forfeited these arguments because he did not object to the admission of Jane Doe's testimony on those grounds in the trial court. Wansor made only one objection in the trial court concerning evidence that he furnished marijuana to Jane Doe, but that objection concerned Wansor's own statement on the subject during his police interview. The trial court overruled that objection, and Wansor does not challenge that ruling on appeal.

Wansor did not object when the prosecutor elicited testimony from Jane Doe about obtaining marijuana from Wansor. Although the trial court initiated a discussion with Wansor and the prosecutor regarding Jane Doe's marijuana-related testimony, that discussion did not involve any objection to

the trial court erred in admitting (1) Wansor's statements during the police interview that he smoked marijuana with Jane Doe, or (2) Jane Doe's specific statements during her forensic interview on that subject.

[8] Evidence Code section 1101, subdivision (b) states that despite the rule in Evidence Code section 1101, subdivision (a) against offering evidence of a person's character to prove his or her conduct on a specified occasion, "admission of evidence that a person committed a crime, civil wrong, or other act" may be admitted "when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act."

16

the admissibility of that testimony. Instead, the trial court initiated the discussion because it perceived the need for a limiting instruction. At no point did either the trial court or Wansor raise the possibility that the testimony should be excluded based on the grounds that Wansor now advances on appeal.

Recognizing that he did not raise an objection in the trial court, Wansor contends that any objection based on prejudice would have been futile, as shown by the trial court's statement during its discussion with Wansor and the prosecutor that "[i]t's starting to get too prejudicial." (See *Gomez, supra*, 6 Cal.5th at p. 287 [forfeiture may be excused when " 'an objection would have been futile' "].) According to Wansor, any objection would have been futile after the trial court made that statement because "[e]ven after acknowledging that the marijuana[-]related evidence was highly prejudicial, the trial court still allowed it." We are not persuaded. When read in context, the trial court's comments that the testimony was "starting to get too prejudicial" referred to the trial court's view that, without a limiting instruction, there was a risk that the jury would improperly use the marijuana evidence to conclude that Wansor has a "bad character or is disposed to commit crime." (CALCRIM No. 375.) The trial court's statement was made at the beginning of the discussion, before it stated it would proceed by instructing with CALCRIM No. 375. Therefore, the trial court's comments gave Wansor an opportunity, had he chosen to use it, to argue that testimony on the subject was so unduly prejudicial that it should be excluded under Evidence Code section 352 and that a limiting instruction would be ineffective.

In sum, we conclude that Wansor has forfeited his appellate argument challenging the admission of Jane Doe's testimony that Wansor furnished her with marijuana.

B.    *Wansor's Prosecutorial Misconduct Argument Is Forfeited*

Wansor next contends that the prosecutor committed misconduct by eliciting testimony from Jane Doe that Wansor furnished her with marijuana.

Relying on the principle that "it is misconduct for a prosecutor *intentionally* to elicit inadmissible testimony" (*People v. Fuiava* (2012) 53 Cal.4th 622, 679 (*Fuiava*)), Wansor argues that the prosecutor's questioning of Jane Doe regarding Wansor's provision of marijuana to her "amounted to prosecutorial misconduct because the testimony was inadmissible." Further, he argues that the purportedly inadmissible testimony was elicited solely for the improper purpose of evoking an emotional bias against Wansor and appealing to the passion and prejudice of the jury.

" 'A prosecutor commits misconduct when his or her conduct either infects the trial with such unfairness as to render the subsequent conviction a denial of due process, or involves deceptive or reprehensible methods employed to persuade the trier of fact.' [Citation.] 'As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion—and on the same ground—the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety.' " (*People v. Nunez and Satele* (2013) 57 Cal.4th 1, 31.) "A defendant's failure to object and to request an admonition is excused only when 'an objection would have been futile or an admonition ineffective.' " (*Fuiava, supra*, 53 Cal.4th at p. 679.)

Here, Wansor has forfeited his prosecutorial misconduct argument because he did not object to the evidence at trial and did not request that the jury be admonished to disregard the evidence. Although Wansor contends that he should be excused from failing to object because "admonition of the jury would not have cured the harm already done," we disagree. We must assume that the jury will follow a trial court's instruction to disregard testimony that was the subject of a successful objection. (*People v. Mills* (2010) 48 Cal.4th 158, 199.) Here, had Wansor raised an objection and asked for an admonition, the trial court could have instructed the jury to disregard any testimony already elicited on the subject of Wansor providing marijuana to Jane Doe, which we presume the jury would have followed.

C. *Substantial Evidence Supports a Finding That the Sexual Penetration in Count 1 Was Accomplished by Force, Violence, Duress, Menace, or Fear of Immediate and Unlawful Bodily Injury*

Wansor's final contention is that insufficient evidence supports his conviction in count 1.

In count 1 Wansor was convicted under section 289, subdivision (a)(1)(B), which makes it a crime to commit "an act of sexual penetration upon a child who is under 14 years of age, when the act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." (§ 289, subd. (a)(1)(B).)[9] The jury was instructed that the People had the burden to prove that Wansor accomplished the act of penetration "by force, violence, duress, menace, or fear of immediate and unlawful bodily

---

[9] The conviction in count 1 was also based on section 269, subdivision (a)(5), which sets forth the crime of *aggravated* sexual assault of a child when the child is under 14 years of age and seven or more years younger than the defendant, and the defendant violates section 289, subdivision (a).

19

injury . . . ." Wansor argues that insufficient evidence supports a finding that the sexual penetration was accomplished by any of those means.

"In evaluating Wansor's challenge to the sufficiency of the evidence, "we must ' "review the entire record in the light most favorable to the judgment," ' and then determine whether it contains ' "evidence that is reasonable, credible, and of solid value" ' such that a reasonable jury could have found the defendant guilty beyond a reasonable doubt. . . . [¶] . . . We must ' "presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence . . . ' . . . for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " ' . . . But we cannot, however, venture beyond the evidence presented at trial, and may consider only those inferences that are reasonably supported by the record. ' "[A] reasonable inference . . . 'may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guess work.' " ' . . . It 'must logically flow from other facts established in the action,' and it cannot be 'based entirely on the suspicions of the officers involved in the case and the conjecture of the prosecution.' " (*People v. Ware* (2022) 14 Cal.5th 151, 167–168, citations omitted].)

At trial, the People argued to the jury that the evidence supported a finding that Wansor accomplished the sexual penetration of Jane Doe either by (1) duress or (2) fear of immediate and unlawful bodily injury. The People take the same position on appeal. As we will explain, the evidence presented to the jury through Jane Doe's testimony and her forensic interview provides

20

substantial evidence to support a finding of both duress and fear of immediate and unlawful bodily injury.[10]

   1.   *The Relevant Evidence*

During her forensic interview, Jane Doe stated that she complied with Wansor's demand that she take off her pants and underwear because Wansor "started getting mad," she "was scared," and she "didn't wanna be hit." Jane Doe described Wansor's demeanor as "more violent . . . like raising his voice," with a "mean look on his face," "like he was gonna hit me." Regarding Wansor's demand that she remove her clothing, Jane Doe stated that even though she "said, 'No,' about once or twice" she "finally . . . did it because he started raising his voice and stuff even more." Jane Doe explained her fear by stating that although Wansor had not hit her in the past, Wansor had previously committed violent acts, such as slapping her grandmother and punching through the door and the wall.

At trial, Jane Doe testified that when Wansor told her to take off her pants and underwear, "I was scared so I did." Specifically, Jane Doe testified she was afraid that Wansor might hit her, as she knew he had hit her grandmother, and because, when he got upset, he punched holes in walls or doors. During his own cross examination of Jane Doe, Wansor asked her why she was scared of him. Jane Doe explained, "Just through my life, you would get upset." She explained the reason she feared Wansor "was definitely how quickly things could turn upside down" and because Wansor would "get upset

---

10     Wansor's appellate briefing also discusses whether the evidence was sufficient to support a finding that the sexual penetration was accomplished by means of force, violence or menace. However, because the People do not rely on those theories to support Wansor's conviction, and because we conclude the conviction is supported on other grounds, we need not, and do not, discuss the issues of force, violence and menace.

21

very quickly and very easily." As an example, Jane Doe recounted an episode when she and Wansor were riding scooters and Wansor "got upset at the scooter" and threw it at the wall.

2.   *Fear of Immediate and Unlawful Bodily Injury*

The jury was instructed with CALCRIM No. 1045 that "[a]n act is accomplished by fear if the other person is actually and reasonably afraid or she is actually but unreasonably afraid and the defendant knows of her fear and takes advantage of it." "[T]he element of fear of immediate and unlawful bodily injury has two components, one subjective and one objective." (*People v. Iniguez* (1994) 7 Cal.4th 847, 856 (*Iniguez*).)

"The subjective component asks whether a victim genuinely entertained a fear of immediate and unlawful bodily injury sufficient to induce her to submit . . . against her will. In order to satisfy this component, the extent or seriousness of the injury feared is immaterial." (*Iniguez, supra*, 7 Cal.4th at p. 856.) If the jury found Jane Doe to be credible, her statements that she complied with Wansor's demands because she was scared Wansor would hit her if she did not do so were sufficient to support a finding that Jane Doe was *subjectively* afraid of immediate and unlawful bodily injury if she did not comply with Wansor's demands.

"[T]he objective component . . . asks whether the victim's fear was reasonable under the circumstances, or, if unreasonable, whether the perpetrator knew of the victim's subjective fear and took advantage of it." (*Id.* at p. 857.) In arguing that Jane Doe's fear was not objectively reasonable, Wansor focuses on the fact that Wansor had never struck Jane Doe in the past. However, that fact is not dispositive. Jane Doe stated that Wansor "started getting mad" at her, was increasingly raising his voice, and had a "mean look on his face." She further explained that she had witnessed

22

sudden angry outbursts, during which Wansor inflicted physical harm on objects or people. Based on that evidence, a rational juror could conclude that it was objectively reasonable for Jane Doe to fear immediate and unlawful bodily injury from Wansor.

      3.    *Duress*

Regarding duress, the jury was instructed with CALCRIM No. 1045: "Duress means a direct or implied threat of force, violence, danger, hardship, or retribution that is enough to cause a reasonable person of ordinary sensitivity to do or submit to something that he or she would not otherwise do or submit to. When deciding whether the act was accomplished by duress, consider all the circumstances, including the age of the other person and her relationship to the defendant." "[T]he legal definition of duress is *objective* in nature and not dependent on the response exhibited by a particular victim." (*People v. Soto* (2011) 51 Cal.4th 229, 246, italics added.)

Our analysis of the sufficiency of the evidence to support a finding of duress is similar to our analysis of the sufficiency of the evidence to support the objective component of fear. Here, the evidence supported a finding that Wansor made an implied threat of force or violence. Specifically, Jane Doe testified that based on Wansor's voice and facial expressions, she perceived that Wansor was going to hit her. The jury was entitled to credit Jane Doe's interpretation of the situation to find that Wansor did indeed communicate an implied threat of force or violence in the manner that Jane Doe perceived. With respect to whether the implied threat "was enough to cause a reasonable person of ordinary sensitivity to do or submit to something that he or she would not otherwise do or submit to" (CALCRIM No. 1045, brackets omitted), the jury could reasonably find that someone in Jane Doe's position, having experienced her father's prior violent outbursts, would react to

23

Wansor's implied threat by submitting to Wansor's demands rather than resisting and risking physical harm.

Wansor contends we should conclude that insufficient evidence supports a finding of duress because his case is "more analogous" to *People v. Espinoza* (2002) 95 Cal.App.4th 1287 (*Espinoza*). We disagree. The crucial distinction is that Jane Doe perceived an implied threat that Wansor was going to hit her if she did not submit to him. In *Espinoza*, the court explained, "The only way that we could say that defendant's lewd act on L. and attempt at intercourse with L. were accomplished by duress is if the mere fact that he was L.'s father and larger than her combined with her fear and limited intellectual level were sufficient to establish that the acts were accomplished by duress. What is missing here is the ' "direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted." ' [Citation.] Duress cannot be established unless there is evidence that 'the victim['s] participation was impelled, at least partly, by an implied threat . . . .' [Citation.] No evidence was adduced that defendant's lewd act and attempt at intercourse were accompanied *by any 'direct or implied threat' of any kind.*" (*Id.* at p. 1321, italics added.) Here, because the evidence amply supports a finding that Wansor made an implied threat to hit Jane Doe, *Espinoza* is inapposite.[11]

_____

[11] Because *Espinoza, supra*, 95 Cal.App.4th 1287, is factually inapposite and the evidence supports a finding that Wansor made an implied threat to hit Jane Doe, we need not, and do not, discuss the People's contention that subsequent case law has called into question *Espinoza's* reliance on authorities stating that psychological coercion, without more, is insufficient

24

In sum, Wansor's challenge to the sufficiency of the evidence to support his conviction in count 1 is without merit.

DISPOSITION

The judgment is affirmed.


IRION, Acting P. J.

WE CONCUR:


DATO, J.


RUBIN, J.

---

to support a finding of duress.  (See *People v. Cochran* (2002) 103 Cal.App.4th 8, 15; *People v. Veale* (2008) 160 Cal.App.4th 40, 47–48.)